UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| BIO-LAB, INC., ET AL.<br>　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES,<br>　　　　Defendant,<br><br>　and<br><br>JUANCHENG KANGTAI CHEMICAL CO., LTD.<br>AND HEZE HUAYI CHEMICAL CO., LTD.,<br>　　　　Defendant-Intervenors . | )<br>)<br>)<br>)<br>)　　　Consol.  Ct No. 25-00054<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

Upon consideration of the Memorandum in support of its Rule 56.2 Motion filed by Plaintiffs Bio-Lab, Inc., Innovative Water Care, LLC, and Occidental Chemical Corporation and the response briefs filed by Defendant and Defendant-Intervenors Heze Hauyi Chemical Co., Ltd. and Juancheng Kangtai Chemical Co., Ltd., and all other papers and proceedings had herein, it is hereby

ORDERED that said Plaintiffs' Motion is DENIED,

SO ORDERED.

DATED: _____　　　_____
　　　New York, New York　　　　　　　Timothy M. Reif, Judge

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| BIO-LAB, INC., ET AL.<br>　　　Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Consol.  Ct No. 25-00054 |
| UNITED STATES,<br>　　　Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JUANCHENG KANGTAI CHEMICAL CO., LTD.<br>AND HEZE HUAYI CHEMICAL CO., LTD.,<br>　　　Defendant-Intervenors . | ) | |


**DEFENDANT-INTERVENORS' RESPONSE BRIEF**

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang
**INTER-GLOBAL TRADE LAW GROUP, LLC**
Suite 1101
1156 Fifteenth Street, N.W.  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
*Counsel to Defendant-Intervenors*

Dated: October 3, 2025

## TABLE OF CONTENTS

I.    Introduction ................................................................................................ 1

II.   Standards of Review ................................................................................... 1

III.  ARGUMENT ............................................................................................... 2

      A.    The Department Properly Found that Mexico was Not Economically
            Comparable to China ................................................................... 4

      B.    The Department Properly Found that Chlorinated Isocyanurate is not
            "Unusual or Unique." ................................................................. 6

      C.    Calcium Hypochlorite and Sodium Hypochlorite are Comparable
            Merchandise .............................................................................. 10

IV.   Conclusion and Prayer for Relief ........................................................... 13

i

# TABLE OF AUTHORITIES

**Cases**

*Baoding Yude Chem. Indus. Co., Ltd. v. United States*, 170 F. Supp. 2d 1335, 1343 (2001) .........5

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938) .........................................2

*CSX Transp., Inc. v. Alabama Dept. of Revenue*, 562 U.S. 277, 295 (2011)..................................6

*Juancheng Kangtai Chem. Co., Ltd. v. United States, SLIP OP. 2015-93, Slip Op. 15-93, 2015 WL 4999476*, at \*25 (CIT Aug. 21, 2015) ........................................................................................5

*Michigan v. Bay Mills Indian Community*, Ed. 2d 1071, 1086 (U.S. 2014)....................................6

*Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2001) .................................................................................................................................................2

*Shandong TTCA Biochemistry Co., Ltd. v. United States*, 774 F. Supp. 2d 1317, 1321 (Ct. Int'l Trade 2011).........................................................................................................................................2

*Shenzhen Xinboda Indus. Co. v. United States*, 976 F. Supp. 2d 1333, 1383 (Ct. Int'l Trade 2014) .................................................................................................................................................9

*Torrington Co. v. United States*, 19 C.LT. 403, 409 (1995), aff'd, 127 F.3d 1077 (Fed. Cir. 1997) .................................................................................................................................................2

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) .............................................................2

**Statutes & Regulations**

19 U.S.C. § 1516a(b) ......................................................................................................................2

19 U.S.C. § 1677b(c) ................................................................................................................... 2-3

**Administrative Decisions**

*Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2010-2011*, 78 FR 4386 (January 22, 2013) ........10

*Fresh Garlic From the People's Republic of China: Preliminary Results, Preliminary Intent To Rescind, and Partial Rescission of the 20th Antidumping Duty Administrative Review; 2013-2014*, 80 Fed. Reg. 75,972 (December 7, 2015)...............................................................5

*Certain Steel Racks and Parts Thereof from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value* (July 17, 2019) .............................................9

*Notice of Final Determination of Sales at Less Than Fair Value: Chlorinated Isocyanurates From the People's Republic of China*, 70 FR 24502 (May 10, 2005) ...................................... 10

## I.   Introduction

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Defendant-Intervenors Heze Huayi Chemical Co., Ltd. ("Heze Huayi") and Juancheng Kangtai Chemical Co., Ltd. ("Kangtai") respectfully submit this response in opposition to Plaintiffs' Bio-Lab, Inc., Innovative Water Care, LLC., and Occidental Chemical Corporations' (collectively Petitioner) Motion for Judgment on the Agency Record and Memorandum in Support of Rule 56.2 Motion for Judgment on the Agency Record (July 14, 2025) ("Pet. R.56.2 Br.").

In their moving brief, Plaintiffs ask for a remand to reconsider whether the U.S. Department of Commerce ("the Department")'s selection of Romania instead of Mexico was supported by substantial evidence.  *See Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review,* 2022-2023, 90 Fed. Reg. 9710 (Feb. 18, 2025), *incorporating* Issues & Decision Memorandum ("IDM") PR132.  The Department's determination that Mexico is not economically comparable to China is supported by the Department's practice, which the trade courts have upheld and the record of this case. The Department's determination that Romania is a significant producer of comparable merchandise, such that the Department did not need to depart from its surrogate country list, is also supported by the law and record.  The Court should not remand this matter for reconsideration of the selection of Mexico.

Defendant-Intervenors support and incorporate by reference the Defendant United States' arguments.  *See* U.S. Response Br. (September 15, 2025); ECF 26.

## II.    Standard of Review

The Court will sustain any determination, finding, or conclusion found by an agency that is supported by "substantial evidence on the record," and is otherwise "in accordance with law."

19 U.S.C. § 1516 a(b)(1)(B)(i). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). Congress intended, and this Court has affirmed that, "Commerce is afforded great latitude in the choice of methodology to be employed in {AD and CVD} investigations." *Torrington Co. v. United States*, 19 C.LT. 403, 409 (1995), aff'd, 127 F.3d 1077 (Fed. Cir. 1997) (citation omitted). As long as Commerce's methodology is reasonable and its conclusions are supported by substantial evidence, "the Court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology." *Id*. (citation omitted).

Thus, under the substantial evidence standard, "{t} he reviewing court may not, 'even as to matters not requiring expertise ... displace the {agency's} choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Shandong TTCA Biochemistry Co., Ltd. v. United States*, 774 F. Supp. 2d 1317, 1321 (Ct. Int'l Trade 2011) (citing *Universal Camera Corp. v. Nat 'I Labor Relations Bd.*, 340 U.S. 474,488 (1951)); s*ee also Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2001) (the Court sustains determinations that are reasonable and supported by the record as a whole, "even if there is some evidence that detracts from the agency's conclusion.").

## III.    ARGUMENT

The statute directs the Department that the "valuation of the factors of production **shall be** based on the best available information regarding the values of such factors in a market economy country or countries considered to be appropriate by the administering authority." 19 U.S.C. 1677b(c)(1)(b) (emphasis added). The statute then continues to require that the

Department should "utilize, **to the extent possible**, the prices or costs of factors of production in one or more market economy countries that are— (A) at a level of economic development comparable to that of the nonmarket economy country, and (B) significant producers of comparable merchandise." 19 U.S.C. 1677b(c)(4) (emphasis added). Based on these statutory provisions the Department has created a sequential three-step analysis for surrogate country selection, analyzing for each potential surrogate country (1) its economic comparability to the NME country; (2) whether the country is a significant producer of comparable merchandise; and (3) the quality and availability of data for calculating surrogate values.

The reason behind the statutory guidelines to source surrogate values from a country that is both economically comparable and a producer of comparable merchandise is in pursuit of the primary goal of finding the best available information---i.e., quality available surrogate values that are most similar to the subject merchandise production in China so that surrogate costs can be attained as accurately as possible.

Petitioner attempts to undermine the Department's surrogate country process by elevating identical merchandise, which is not actually required by the statute, above economic comparability. Petitioner's arguments nitpick different elements of the Department's long-standing practice, asking the Department on the one hand to define economic comparability broader and on the other hand asking the Department to narrow its definition of comparable merchandise down to identical merchandise. Ultimately, petitioner's contrary arguments also fail to address the ultimate goal of the surrogate country process—locating the best available information.

**A.    The Department Properly Found that Mexico was Not Economically Comparable to China.**

The Department has already determined that Mexico is not economically comparable to China and therefore Mexico fails to fulfill the first criterion for surrogate country selection. Based on the 2022 GNI (Gross National Income) data, the Department excluded Mexico from the surrogate country list because its GNI was too low in comparison to China. Petitioner argued that Mexico should be considered economically comparable to China even based on 2022 GNI data, because the world bank updated some GNI data for 2022 in December 2023, and the updated Mexico GNI was higher and in range with other countries on the list. Pet Rebuttal SVs (January 2, 2024), PR65-66. However, this data was not submitted in time for this review. This was submitted after not only after the deadline to submit GNI comments, but also after the surrogate country comment deadline. The Department has established deadlines for comments on the GNI list and surrogate country early in the proceeding so that parties and the Department have time to consider potential surrogate countries and submit surrogate values. The Department has a practice of not revisiting this list, even if later data becomes available, because of procedural hurdles and unfairness. Indeed, the Department properly declined to consider this later data, citing for example that the updated GNI was only partial and did not include updated data for Chile or China. IDM at 8; PR132. Thus, it was even more improper to reanalyze economic comparability at that time when the Department did not have updated data for China or other countries to determine its relative comparability. As evidenced over the years, there is not one set GNI range for the surrogate countries, rather it has changed over time as the Department analyzed China's changing GNI and other countries' changing GNI in comparison.

Further, the Department's methodology does not require that a country within the band of GNI would be necessarily on the surrogate country list. The Department has an established

policy of considering only the countries on the surrogate country list as being at the same level of economic comparability and will only depart from that surrogate country list if no country on the list fulfills the Department's requirements. *See*, e.g., *Fresh Garlic From the People's Republic of China: Preliminary Results, Preliminary Intent To Rescind, and Partial Rescission of the 20th Antidumping Duty Administrative Review; 2013-2014*, 80 Fed. Reg. 75,972 (December 7, 2015) and accompanying PDM at 24-25 ("…the Department only departs from the countries on the OP list if we find that none of the countries on the list are significant producers of identical or comparable merchandise or there are issues regarding the availability of SVs from the countries on the list."). In this case, Romania fulfills all of the Department's surrogate country requirements (as did Malaysia, which Defendant-Intervenors argued for during the review), and thus the Department must not depart from its practice to rely upon Mexico. That would invite wide-spread country forum shopping and vastly complicate the Department's work in these cases.

The Department's use of 2022 GNI and its agency discretion in creating the surrogate country list has been consistently upheld by the Courts and this review is no different. *See Juangcheng Kangtai Chem. Co., Ltd. v. United States*, Slip Op. 15-93, SLIP OP. 2015-93, 2015 WL 4999476, at *7-8 (CIT 2015) (Commerce properly may "narrow a list of countries within a band for purposes of administrative feasibility,"); *Baoding Yude Chem. Indus. Co., Ltd. v. United States*, 170 F. Supp. 2d 1335, 1343, SLIP OP. 2001-117 (2001) (Commerce's decision to limit OP's list of potential surrogates to six countries represents "precisely the type of discretion left within the agency's domain.").

**B.** **The Department Properly Found that Chlorinated Isocyanurate is not "Unusual or Unique."**

Petitioner argued that chlorinated isocyanurates are so "unusual or unique" such that the

sequential approach to the surrogate country selection should be reconsidered.  Pet. R56.2 Br. at 20-21.  Essentially, this argues that Mexican production of identical merchandise should overcome the fact that Mexico is not economically comparable to China in this review.  While petitioner's argument is short, its implications bleed into its next argument that calcium and sodium hypochlorite are not comparable merchandise.  This argument, and the following argument, essentially argue that Mexican production of identical merchandise is most important.  Petitioner's argument that chlorinated isocyanurates are so unusual or unique or petitioner's argument that comparable merchandise should be so narrowly defined as to essentially be identical merchandise—both elevate identical merchandise in a way not supported by the law.

The statute does not direct the Department to rely on countries that are significant producers of *identical* merchandise, but directs the Department to rely on significant producers of *comparable* merchandise.  The statute does not contemplate that identical production is necessary or even superior.  Congress chose to use comparable merchandise, and petitioner's arguments are impermissible because it removes any meaning from the term "comparable" in the statute.  *Michigan v. Bay Mills Indian Community*, Ed. 2d 1071, 1086 (U.S. 2014) (Congress wrote the statute it wrote--meaning, a statute goes so far and no further; "This Court has no roving license, in even ordinary cases of statutory interpretation, to disregard clear language simply on the view that … Congress 'must have intended'" something different.) *citing CSX Transp., Inc. v. Alabama Dept. of Revenue*, 562 U.S. 277, 295 (2011).

The type of "unique" product contemplated in the policy bulletin on surrogate country selection that would necessitate a unique approach or narrow definition are notably not chemicals with common inputs like chlorine.  The example in the policy bulletin is fish fillets.  Policy Bulletin 04.1.  For that product, the Department requires surrogate values for catfish, fish

food, and other surrogate values unique to the catfish industry. These are unique, difficult to value surrogate values that have not only necessitated a different approach to surrogate country selection, but have involved relying on surrogate values in secondary countries that are not economically comparable because they provided the only surrogate values specific to the input. None of these facts are present here. Chlorinated Isocyanurates is not so unique of a product with such unique surrogate values such that the Department must throw out its normal methodology. The raw materials for chlorinated isocyanurates are used in numerous industries, and no such unique approach has ever been needed to find reliable surrogate values.

The inquiry into significant production also cannot be separated from the purpose of the inquiry: to find a representative surrogate country for a Chinese chlorinated isocyanurates producer. The purpose of this inquiry is to find available and representative pricing for surrogate values (i.e., production costs). As elaborated further below, Sodium hypochlorite and calcium hypochlorite have the same key raw material inputs as chlorinated isocyanurates and are used in the same water treatment market. *See* Resp. Rebuttal GNI Comments (October 23, 2023) at Attachment 3; PR33. Unlike some other products and investigations, the subject merchandise, *i.e.* chlorinated isocyanurates, is highly similar to the comparable merchandise, *i.e.* sodium hypochlorite and calcium hypochlorite. They are substitutable products offering the same functions and share the same fundamental factors of production and production processes, such as chlorination. Therefore, the presence of a robust and comparable sodium hypochlorite and/or calcium hypochlorite industry is equally probative of fulfilling the underlying purpose of this surrogate country criterion: representative surrogate values.

Indeed, the Mexican surrogate value record is definitively not superior to Romania. While Mexico may have identical production, the only Mexican financial statement is from

CYDSA, which does <u>not</u> produce identical merchandise.  There is only evidence of one producer of identical merchandise in Mexico, Aquachlor, but that financial statement is not on the record. Therefore, the fact that Mexico has some production of identical merchandise has only a very minimal perceived impact on the quality of the surrogate values.  The only presumed impact is the assumption that at least some of the import data into Mexico *may* be used in chlorinated isocyanurates production—a very attenuated assumption particularly when there is only one identical producer in the entire country.  In contrast, the fact that Mexico is not economically comparable to China certainly has a more significant impact on the quality of every single surrogate value.  Every single surrogate value in Mexico is of lesser quality in comparability to the cost of the item in China because Mexico is not at the same economically comparable level as China.

The Mexico surrogate value record also has other data flaws.  Continuing with the sole Mexican financial from CYDSA, this company is a massive conglomerate with numerous business segments, only of which lists one comparable product among their many other products – sodium hypochlorite.  Pet. Prelim. SVs (December 21, 2023) at Exhibit 9, PR54-55.  This fact is particularly interesting given petitioner is also arguing that sodium hypochlorite is not even a comparable product.  If that is the case, then there are no financials even in Mexico from even a producer of comparable merchandise.

Further, CYDSA's electricity and steam cogeneration division supplies all electricity needs for the company.  These costs are dissimilar to the costs incurred by Respondents and means that CYDSA is at a different level of integration than the Respondents, who purchase electricity.  CYDSA is also a massive conglomerate with 20 subsidiaries in 8 different cities in Mexico.  The advertising and promotion of numerous global brand names is also radically

dissimilar from the respondents' situations where they have no branding at all. *Shenzhen Xinboda Indus. Co. v. United States*, 976 F. Supp. 2d 1333, 1383 (Ct. Int'l Trade 2014) (finding the marketing and branding expenses of a large company were critically different for respondent).

Further, the Mexican import values are reported on an FOB basis. The Department relies on a CIF value and therefore if the Department relies upon Mexico, it must add facts available for international freight, marine insurance, and brokerage & handling expenses to each import value to arrive at an approximate CIF value for each of the respondents' material and packing inputs, decreasing the accuracy of each value. While the Department can make adjustments to the FOB data—it is only a very rough approximation of the actual CIF costs. Therefore, every single import value into Mexico is less preferable than Romania, which reports its import values on a CIF basis. Indeed, the Department has found this to be a tiebreaker between competing surrogate countries, preferring to rely upon the CIF country. *Certain Steel Racks and Parts Thereof from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value* (July 17, 2019) ("Conversely, the Romanian SV data are already reported on a CIF basis and require no adjustment because they include specific actual costs for inputs used in the production of subject merchandise. While this difference alone may not necessarily be sufficient to determine that Romania is preferable to Brazil as a surrogate country, the totality of the evidence, as discussed above, leads us to find that Romania is the appropriate primary surrogate country in this case.").

While petitioner did not argue about the specific surrogate values in Mexico, we submit it is very relevant to their arguments. The entire purpose of the surrogate country selection and methodology is to find the best available information to value Respondents' FOPs. Petitioner's

arguments to narrow the surrogate country list to essentially one- Mexico-runs contrary to the inquiry to find the best available information.

### C. Calcium Hypochlorite and Sodium Hypochlorite are Comparable Merchandise.

Petitioner's last argument to rely upon Mexico, is to undermine the Department's conclusions that it has a suitable surrogate country in Romania because sodium hypochlorite and calcium hypochlorite should not be considered comparable products. Notably, this stands in contradiction to petitioner's own arguments in the investigation and sixth review that the manufacture of these products should be found comparable. The Department explained in detail that calcium hypochlorite was a comparable product in the investigation, supporting petitioners own statements. *Notice of Final Determination of Sales at Less Than Fair Value: Chlorinated Isocyanurates From the People's Republic of China*, 70 FR 24502 (May 10, 2005) and accompanying IDM at Comment 2. Then, in the sixth review, the Department explained in detail, based on petitioner's own request that sodium hypochlorite be considered comparable, its finding that both calcium and sodium hypochlorite are comparable products. *Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2010-2011*, 78 FR 4386 (January 22, 2013) and accompanying IDM at Comment 1.

After numerous years and reviews of all parties agreeing that calcium and sodium hypochlorite are highly comparable products, it was only when Mexico was no longer on the surrogate country list that petitioner changed course in hopes of arguing Mexico is the only suitable choice, even if not economically comparable.

The Department considered all of the arguments that petitioner made and nevertheless again concluded that these products are comparable products. IDM at 8-10, PR132. After this

careful analysis, referring back to the even more detailed analysis the Department conducted in the past review, the Department properly still concluded calcium hypochlorite and sodium hypochlorite to be comparable merchandise. The Department discussed the similar raw materials, similar manufacturing process and equipment, similar end-uses, and similar functionality within the chlorine family. In its response brief, the United States again explained in detail how similar these products are. U.S. Resp. Brief at 34-44. Defendant-Intervenors support these arguments.

In reality, chlorinated isocyanurates is highly similar to the comparable merchandise, *i.e.* sodium hypochlorite and calcium hypochlorite. They are substitutable products offering the same functions and share the same fundamental factors of production and production processes, such as chlorination. *See* Respondent Rebuttal GNI Cmts at Exhibit 3 (information on comparability). All three products are used in water sanitation. Petitioner nitpicks very small differences that the Department squarely addresses. U.S. Resp. Brief at 34-44. For example, petitioner focuses on the fact that cyanuric acid is not an input for calcium or sodium hypochlorite. However, this is not a major input, but rather acts as a binding agent. For end use, despite all three products being used in the sanitization of water, petitioner focuses on subject merchandise being primarily used in residential pools while calcium and sodium hypochlorite may be used in larger pools or bodies of water. This distinction is so small and petitioner fails to support how this renders the product not comparable.

Lastly, these nitpicking, very small differences between these products would have no impact on the availability of comparable surrogate values. For example, petitioner discusses machinery, slightly more complex manufacturing, and labor differences as import distinctions between calcium/sodium hypochlorite and subject merchandise. Pet. R56.2 Br. at 27-30. Not

only are these minor, but it would not impact the comparability of surrogate values in the competing surrogate countries. There is no surrogate value for machinery or manufacturing; these are a part of the financial ratios. As discussed above, the financial ratios even in Mexico are not sourced from a company that produces identical merchandise. The labor rate applied is a general manufacturing labor rate. Thus, even assuming that since Mexico has some identical production, it has some manufacturing with these more comparable machinery or processes, that increased comparability would not impact any surrogate value relied upon.

Petitioner's arguments are in a void. They fail to consider that the statute specifically called for comparable merchandise, not identical or nearly identical. They fail to consider that the entire point of the surrogate country process is to arrive at the best available surrogate values—quality, comparable, and available surrogate values. By determining to rely on a country that is a significant producer of calcium or sodium hypochlorite, the Department has not overly narrowed the basket but, as intended by Congress, has narrowed it enough that parties could locate multiple potential surrogate values that sources all inputs and had comparable financial statements.

**IV.     Conclusion and Prayer for Relief**

In light of the foregoing, Defendant-Intervenors respectfully request that the Court not remand for any of the issues raised by petitioner.

Respectfully submitted,

/s/ Gregory S. Menegaz
Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang**
**Inter-Global Trade Law Group**
Dated:  October 3, 2025              *Counsel for Defendant-Intervenors*

---

** Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **3,529** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

_____

Gregory S. Menegaz